Bornhofen v. Greenebaum.

## Nick J. Bornhofen, Annie Bornhofen and Charles F. W. Kleene v. David S. Greenebaum.

1. EVIDENCE—*Inferences from Matters Withheld.*—The truth of a contested matter may sometimes be arrived at by a consideration, not only of what was adduced in evidence, but of what the parties having the power to produce withhold.

2. FRAUD—*May be Proved by Circumstances.*—The court discusses the evidence and finds that the decree of the court below is based upon forged notes, and that the alleged makers of the same have not been guilty of any negligence or conduct by which they are estopped to deny the genuineness of such notes.

Foreclosure, of a trust deed. Appeal from the Superior Court of Cook County: the Hon. JOHN BARTON PAYNE, Judge, presiding. Heard in this court at the October term, 1896. Reversed and a decree entered in this court dismissing the bill. Opinion filed February 9, 1897.

ALBION CATE, attorney for appellants.

SIMEON STRAUS, attorney for appellee.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

This is an appeal from a decree for the foreclosure of a mortgage, by way of a trust deed, claimed to have been made by Nick J. Bornhofen and Annie Bornhofen, his wife.

Upon the trial of the cause it appeared that about January, 1894, Nick J. Bornhofen applied to William J. Haerther, a mortgage broker, for a loan of $1,500 for three years,

on his, said appellant's, homestead, being number 1620 Addison avenue, Chicago. Haerther agreed to make the loan; thereupon Bornhofen and his wife executed a trust deed of said premises, dated January 16, 1894, running to Haerther as trustee, which deed was by the grantors duly acknowledged on the evening of January 17th, 1894, before John F. Schenuit, a notary public, then Haerther's book-keeper.

Said trust deed was to secure one principal note for $1,500 and six interest notes, all to the order of Nick J. Bornhofen, which notes were by him at the same time made, indorsed and delivered to Haerther. Haerther, having taken these securities, filed the trust deed for record, February 1, 1894.

December 21, 1894, Mr. Bornhofen received from C. J. Hambleton a letter informing him that he, Hambleton, had purchased and held the $1,500 note and mortgage, together with the interest notes maturing January 1, 1895, and thereafter. This was the first information Bornhofen received of the transfer of the notes and mortgage made as aforesaid by him, Bornhofen. Of the $1,500 agreed to be loaned to him, and for which he gave his note, Bornhofen received only $503, although he made many applications to Haerther for the payment of the balance of the loan, being put off by one excuse and another—sometimes that there was some defect in the abstract of title—and being indebted to one Kleene, from whom he had purchased the property for something over $900, as a balance of the purchase money he obtained from Kleene an agreement that he, Kleene, would receive Haerther's judgment note in payment of the balance due him, Kleene. Thereupon, Bornhofen agreed to take from Haerther his, Haerther's, judgment note for the balance on the loan he, Haerther, was owing him, Bornhofen.

Haerther gave his note, but declined to annex thereto a warrant of attorney to confess judgment, telling Bornhofen to take it as it was, and try Kleene and see if he would not accept it. Haerther did take such note to Kleene, and endeavored to have him accept it, but Kleene refused so to do.

The trust deed for which the decree appealed from was in foreclosure of, was not, nor were the notes secured by it, that or those heretofore mentioned.

The first intimation that Bornhofen received that any other notes or trust deed, purporting to be executed by him or his wife, were in existence, was in January, 1895, when somebody from the banking house of Kozminski & Company, for the owners of the securities which the decree in this case is based upon, came to Bornhofen's office, at 1877 North Clark street, and exhibited to him two of the notes secured by the trust deed held by Kozminski & Company, asking him if they were his, to which he replied that they were not. By the evidence in this cause, it appears that about the middle of February, 1894, Haerther went to the office of Kozminski & Company, offering to sell the trust deed and notes heretofore mentioned as executed by Bornhofen and wife January 16, 1894. Kozminski & Company, after looking at the property, advanced to Haerther $1,000 upon it, he saying that he wished a temporary loan to that amount, and afterward Kozminski & Company purchased the securities executed as aforesaid on the 16th day of January, 1894, giving to Haerther therefor, in addition to the $1,000, $482, which last mentioned sum was paid on the 28th of February, 1894.

When Kozminski & Company agreed to purchase this security, they told Haerther that they preferred having the mortgage made out on their own sets of papers, to make it more negotiable. They therefore handed to Haerther blank forms of trust deed and notes, such as they were using, in order that he might have new papers executed upon such forms. Haerther took these forms, and returned them on the 28th of February, having thereon a trust deed, apparently executed by Bornhofen and wife, and acknowledged before him, Haerther, as a notary public, together with a note for $1,500, and coupon interest notes apparently executed by Nick J. Bornhofen, the same being described in the trust deed as secured thereby. This trust deed and these notes Haerther delivered to Kozminski & Company at

the time he received the final payment made to him of $482, and then received from Kozminski & Company, the genuine trust deed and notes made by Bornhofen and wife, as aforesaid. The principal note thus delivered by Kozminski & Company to Haerther had nearly three years to run, and none of the coupon notes were then due. Without canceling the same, or putting any mark thereon indicating that they were, by the giving of new securities, paid or satisfied, Kozminski & Company delivered them to Haerther, who took them away, and thereafter pledged them, with other securities, to Mr. Hambleton as security for a loan of $2,500.

Mr. Bornhofen, after the notice by him received from Mr. Hambleton, regularly paid to him the interest coupon notes made January 16, 1894, as they became due. At the time of the hearing of this cause, only two of such coupon notes were outstanding, they not being then due.

At the time Haerther delivered to Kozminski & Company the trust deed which this action was brought to foreclose, he gave to Kozminski & Company a deed releasing the lien of the trust deed executed by Bornhofen and wife January 16, 1894. This release deed was executed by him, Haerther, he being the trustee named in said trust deed. The trustee named in the deed which Haerther gave to Kozminski & Co. and which the decree under consideration forecloses, was Maurice W. Kozminski. The release deed heretofore mentioned was filed for record March 2, 1894, being dated March 1st.

Bornhofen repudiated the trust deed and notes given to Kozminski & Co. February 28, 1894, as aforesaid; and refusing to make any payment thereon, December 21, 1895, David S. Greenebaum, as the representative of Kozminski & Co., and for their benefit, filed a bill to foreclose the last mentioned deed.

Upon the hearing, the foregoing appearing, Nick J. Bornhofen and Annie Bornhofen denied positively and unequivocally, the execution of the trust deed taken by Kozminski & Company February 28, 1894, as aforesaid, and

Mr. Bornhofen also denied having executed any of the notes which said trust deed purports to secure. Each of the Bornhofens also denied ever having had any notice or knowledge of the making of such trust deed and notes, or any desire that they or either of them should execute the same, until in January, 1895, when two of such notes were presented to Mr. Bornhofen to know if they were made by him, as before mentioned.

Mr. Schenuit, the notary public before whom the trust deed executed January 16, 1894, was acknowledged, testified that being at the time of such execution a bookkeeper of Mr. Haerther, he saw Mr. Bornhofen write his name to the notes and the trust deed then made; that this was the only time he had ever seen him write; that therefrom he believed that the signatures, "Nick J. Bornhofen," on the trust deed and notes now held by Kozminski & Company, are the signatures of Nick J. Bornhofen, defendant.

One Henry L. Tolman, a microscopical handwriting expert, testified that he had examined and compared the signatures of Mr. and Mrs. Bornhofen upon the trust deed and notes by them executed January 16, 1894, and those upon the trust deed and notes sought in this suit to be fore-closed, and from such examination is of the opinion that the two sets of notes are signed by one and the same parties, and that the signatures, "Annie Bornhofen," to each of the trust deeds is by the same person.

There was also in evidence an application for the loan agreed to be made by William Haerther, and for which the trust deed executed January 16, 1894, was given, which application was signed by Nick J. Bornhofen. Mr. Tolman also examined this, and was of the opinion that the signatures, "Nick J. Bornhofen," upon the trust deed and notes held by Kozminski & Company, were made by the same hand that wrote the signature to said application.

Prior to the bringing of the present suit, Bornhofen brought a bill for the purpose of canceling and enjoining the collection of the papers made by him January 16, 1894, and a decree in that case was entered to the effect that, as

between the parties to that controversy, Hambleton and Haerther on the one side and Bornhofen on the other, the papers were good only for the $503.15, the entire sum which Bornhofen had received thereon, and interest, in all amounting to the sum of $562.28; but as to the rest of the world, said trust deed and notes are a valid and subsisting first lien upon said premises, according to their tenor. That on or about the first day of March, 1894, said Haerther, trustee in said trust deed, without complainants' knowledge or consent, fraudulently and illegally released said trust deed, and that said trust deed is a valid lien in full force, according to its terms, notwithstanding said release, and that Haerther fraudulently converted said securities to his own use. That Hambleton, upon receipt of $562.28, deliver said trust deed and notes to complainant (Bornhofen) or to Albion Cate, his solicitor. It also appeared that criminal proceedings had been instituted against Haerther for his conduct in the premises.

The court below found that the securities given to Kozminski & Company by Haerther, on the 28th of February, 1894, as aforesaid, were executed by Bornhofen and wife, as they purported, and a decree for the foreclosure of the same was entered, from which this appeal is prosecuted.

From a careful consideration of the record here presented we are of the opinion that the signatures, "Nick J. Bornhofen" and "Annie Bornhofen," upon the trust deed and notes held by Kozminski & Company, which this action was brought to foreclose are forgeries. If they are the genuine signatures of Nick J. Bornhofen and his wife, then such fact necessarily was and is known to William J. Haerther; he it was who was interested in having new papers made; he had been informed by Kozminski & Company that they wished papers prepared upon their forms. Haerther was obtaining money from Kozminski & Company for his purposes, not as an agent of the Bornhofens, or for their or either of their use.

In order to induce them to execute new papers, and more especially new and additional papers covering the same loan,

at a time when a month and a half had elapsed since the
execution of the first, yet without his, Haerther, who made
the original loan, having paid thereon but one-third of the
amount of the same, it is evident that he must have not only
applied to Mr. and Mrs. Bornhofen, but must have made a
very considerable and plausible explanation to induce them
to execute, under such circumstances, such additional papers.
Moreover, the additional trust deed purports to have been
acknowledged before him, William J. Haerther, as notary
public.  He received the notes, if from Nick J. Bornhofen
at all, either directly or by the hand and through the
agency of some third party.  In whatever way he obtained
the trust deed and notes from the Bornhofens, he was a
competent witness to testify as to all the circumstances, all
that was said and done by which the Bornhofens were in-
duced to execute and deliver to him these additional papers
without receiving the first ones in place thereof.  Mani-
festly, under the positive and unequivocal denial made by
the Bornhofens, it was for Kozminski & Company to estab-
lish the validity of the instruments under which they claim,
and as they had received them from the hand of Mr. Haer-
ther it was most natural that they should call him as their
witness.  This they did; their examination of him, however,
was restricted to three questions: First, if he was ac-
quainted with Nick J. Bornhofen, the defendant; second,
if he knew the signature attached to the application for the
loan agreed to be made by him, Haerther, to secure which
loan the trust deed executed January 16, 1894, was made;
to which he answered that he did.  He was then asked how
he knew it, to which he replied that he saw Nick J. Born-
hofen sign it.  His cross-examination was confined to the
matter concerning which he had been examined in chief,
which was a thing about which there was no dispute.

It is quite evident that Kozminski & Company did not
think best, doubtless were well advised, that it was not pru-
dent or expedient to subject Mr. Haerther to a rigid cross-
examination concerning the circumstances and details sur-
rounding his obtaining the two sets of papers from the

Bornhofens. It was natural that the defendants should not call upon Haerther to testify as to this matter, when, from the very nature of the case, it was impossible that he should do other than insist that the signatures were genuine, or confess himself guilty of a crime which would consign him to the penitentiary.

The truth as to a contested matter may sometimes be arrived at by a consideration, not only of what was adduced in evidence, but what parties, having the power to produce, withhold.

Mr. and Mrs. Bornhofen either told the truth when they denied these signatures, or they were guilty of willful, deliberate and corrupt perjury. The character and standing of neither has been assailed. Against their testimony stands only the evidence of two experts; one the bookkeeper of William J. Haerther, before whom, as a notary public, the genuine trust deed was acknowledged, and who saw Mr. Bornhofen sign his name to the genuine notes; the other, a microscopical expert, who testifies by a comparison of the signatures.

We do not impute to either of these experts any design to do otherwise than fairly state the opinion which each held. In reversing the decree of the court below we do not impute perjury to any witness. That experts as to handwriting may be honestly mistaken is obvious.

It is urged by appellee that the certificate of William J. Haerther, the notary public before whom the trust deed held by Kozminski & Company purports to be acknowledged, is conclusive to the same extent that is a record, and the language of this court in a former case is cited, in which it was said such certificate can only be overcome by the strongest and most unequivocal testimony; by evidence that is clear and convincing beyond a reasonable doubt; by evidence of the clearest, strongest and of the most convincing character, and by disinterested witnesses; by evidence that is full, clear and satisfactory, and that, like a record, it can only be impeached for fraud.

If the right of Kozminski & Company to the decree which,

in the name of David S. Greenebaum, they have obtained, were dependent only upon the trust deed they held, the certificate of acknowledgment of the same by William J. Haerther might be conclusive; but the decree is based, not alone upon such trust deed so acknowledged, but upon the assumed validity of notes made by Nick J. Bornhofen. If Kozminski & Company had no genuine notes secured by such trust deed, if there were never and are not any notes made by Nick J. Bornhofen which said trust deed purports to secure, then the essential foundation of the decree under consideration fails. The evidence as to the existence of such notes rests upon the positive testimony of Nick J. Bornhofen and wife on the one hand, and the opinion of two experts as to handwriting upon the other. It is impossible that Nick J. Bornhofen and Annie Bornhofen should be mistaken as to this matter, while it is easy that such should be the case as to the experts.

In our judgment, all the circumstances surrounding this transaction tend to show that the trust deed and notes for the foreclosure of which the decree under consideration was entered, are forgeries. It is very unlikely that Mr. Bornhofen would, a month and a half after he had delivered the genuine instruments, and when he had received but $503 of the money due him thereon, have executed additional securities to take their place, and entrusted them to the man who was so greatly in default, without at the same time getting possession of the securities already outstanding. Nor does it seem probable that with all the annoyance and suspicion which must have come to Nick J. Bornhofen from the default of William J. Haerther in paying him but one-third of the $1,500 which he agreed to loan, and which he had received the securities for, Mr. Bornhofen would have executed and delivered to William J. Haerther additional securities and rested easy. It would have been most natural for him to have been continually inquiring, under such circumstances, not only why the thousand dollars in money coming to him was not handed over, but also why the first set of securities were not returned. Even after the notice sent to

him December 21, 1894, by Mr. Hambleton, that the genuine securities had been transferred, Bornhofen does not seem to have been alarmed, as he unquestionably would have been had he then known that there were outstanding negotiable double securities for the same indebtedness.

Counsel for appellee argue that Haerther was the agent of Bornhofen, and Bornhofen clothed him with *indicia* of ownership of his notes, and therefore must suffer the loss occasioned by the dishonesty of his own agent.

Such contention assumes the very point in controversy, namely, that the notes held by Kozminski & Co. were executed by Bornhofen, and were by him delivered to Haerther. The undisputed evidence upon this matter is that Haerther, for his own purposes and not even as an assumed agent of Bornhofen, desired to procure, first, a temporary loan of $1,000, and next, to sell the genuine securities executed by the Bornhofens, and that afterward having, as requested by Kozminski & Company, given to them what he claimed were other securities executed by the Bornhofens, Kozminski & Company surrendered to him the genuine notes made by Nick J. Bornhofen and wife, then having nearly three years to run, without marking the same in any way, so that Haerther could not, as he afterward did, dispose of the same for his own fraudulent purposes. Kozminski & Company knew that in what Haerther did he was acting for himself, that the notes of Nick J. Bornhofen which were surrendered to Haerther were paid, if the notes and trust deed then brought by Haerther and given to Kozminski & Company were genuine. Kozminski & Company had no right to assume, as they did, that Haerther would at once deliver the genuine notes to Nick J. Bornhofen. Even if they had been informed by William J. Haerther that he was the agent of Nick J. Bornhofen to take back to him his notes, they had no right to assume that he was such agent, to take into his custody discharged and satisfied notes without having marked thereon that which would have shown that they were no longer existing securities. It is Kozminski & Company who, by their

negligence, enabled Haerther to perpetrate the fraud he did. Had Kozminski & Company exercised common prudence or had proper thought and consideration for the rights and interests of Nick J. Bornhofen, they would have marked his notes paid before they delivered them to William J. Haerther. Kozminski & Company were careful to secure a deed releasing the lien of the trust deed first brought to them, but exercised no care to see that the notes of Nick J. Bornhofen were not left in a condition where they might be, as they afterward were, fraudulently disposed of by Haerther.

While no suspicion exists that Kozminski & Company, or any one connected with them, contemplated for a moment the perpetration of the fraud by Haerther, nevertheless, it was the negligence of this firm that enabled Haerther to do what he did.

Attention is called to the following statement in the answer of Nick J. Bornhofen, and it is said that he does not unequivocally deny the execution of complainant's papers :

" That neither he nor his wife executed, acknowledged or delivered the deed and notes in bill of complaint mentioned; that they were entirely without consideration, or their execution was obtained by fraud such as to render them void in the hands of any holder; that said trust deed and notes were fraudulently concocted or procured without any consideration by said Haerther, and delivered to said Kozminski & Company, and are merely a duplicate set of papers for the same loan evidenced by said trust deed to Haerther and the notes secured thereby."

The answer of Nick J. Bornhofen was drawn and signed for him by his solicitor. The additional statement therein made, was evidently inserted by the solicitor as a matter of caution; knowing, as he presumably did, how much iniquity Haerther had been guilty of, he felt that it was possible the Bornhofens had been fraudulently deluded into signing more and other papers than they were aware.

Being satisfied that the decree under consideration is based upon forged instruments, and that neither Bornhofen or

his wife have been guilty of negligence or conduct by which they are estopped to deny the genuineness of the notes upon which the order of the court below is based, the decree of the Superior Court is reversed, and a decree will be here entered dismissing the bill of appellee. Reversed, and decree entered here.