## DAVID S. GREENEBAUM

*v.*

## NICK J. BORNHOFEN *et al.*

*Filed at Ottawa June 8, 1897—Rehearing denied October 12, 1897.*

1. EVIDENCE—*handwriting—court should compare signatures to satisfy itself.* Where the issue in a trial without a jury is whether or not certain signatures are genuine, the court may, and should, compare them with signatures in evidence admitted to be genuine, as a means of determining whether they are genuine.

2. SAME—*when evidence sustains trial court's finding.* The finding of the trial court, in a case tried without a jury, that certain signatures are genuine on the evidence of two witnesses, one qualified as an expert and the other familiar with the handwriting, as against the mere denial of the party whose signature it purports to be, should not be disturbed by a court of review.

PHILLIPS, C. J., and MAGRUDER, J., dissenting.

*Bornhofen* v. *Greenebaum*, 68 Ill. App. 645, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN BARTON PAYNE, Judge, presiding.

SIMEON STRAUS, for appellant.

ALBION CATE, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellant filed his bill in the Superior Court of Cook county to foreclose a trust deed alleged to have been made by two of the appellees, Nick J. Bornhofen and Anna Bornhofen, his wife, to Maurice W. Kozminski, to secure the payment of one principal note for $1500, payable three years after date, with interest at seven per cent, evidenced by six interest notes, all made by said Nick J. Bornhofen, dated January 16, 1894, payable to his own order and endorsed by him. Nick J. Bornhofen answered, alleging that he and his wife had executed a trust deed to William J. Haerther of the same date as

the one held by appellant, to secure a principal note of $1500, due in three years, with seven per cent interest, and six interest notes, all payable to his own order and endorsed in blank, but denying that he or his wife executed, acknowledged or delivered the trust deed or notes mentioned in the bill. He averred that they were entirely without consideration, or that their execution was obtained by fraud, and that they were fraudulently concocted or procured without consideration by said Haerther and delivered to Kozminski & Co., appellant's firm, and that they were merely a duplicate set of papers for the same loan evidenced by said trust deed to Haerther. The answer of Anna Bornhofen was of similar tenor, and added that appellant's trust deed and the notes secured were a fraudulent duplicate, manufactured or fraudulently obtained by Haerther without any consideration. The appellee Charles F. W. Kleene, who was one of the defendants to the bill, answered to the same effect, and alleged that he formerly owned the premises and conveyed them to his co-defendant Nick J. Bornhofen, subject to a purchase money lien for about $1000, and that he was the legal holder of the note secured by the trust deed made to Haerther, which he claimed to be a valid lien. Replications were filed, and these pleadings presented issues of fact which were heard by the chancellor. The evidence of the respective parties was produced in open court, and upon hearing the same the chancellor found that Nick J. Bornhofen executed the note held by appellant, and that the trust deed sought to be foreclosed was duly executed to secure the same. This was the only matter in dispute between the parties, and a decree for sale was entered providing that appellant's notes should be first paid out of the proceeds of such sale, and that appellee Charles F. W. Kleene should be next paid the amount due him. On appeal to the Appellate Court for the First District, that court, upon a consideration of such evidence as was contained in the record, reversed

the decree and entered a decree dismissing appellant's bill of complaint.

By the evidence appearing in the record the following facts are proved: The defendant Nick J. Bornhofen applied to William J. Haerther, who styled himself a mortgage banker, for a loan of $1500 upon the property described in the trust deed, and signed an application dated January 16, 1894, whereby he engaged Haerther's services to procure such loan, and agreed to furnish an abstract to remain in Haerther's hands, for the use of the lender, until the loan should be paid, and to pay Haerther a commission of two and a half per cent on the amount of the loan for his services in negotiating the same. On January 17, 1894, he executed the notes described in his answer, payable to his own order, and endorsed the same, and he and his wife made and acknowledged before John F. Shenuit, a notary public, who was then Haerther's cashier and book-keeper, the trust deed to Haerther to secure the same, all bearing the same date as the application,—January 16, 1894. This trust deed was recorded February 1, 1894. Complainant and Maurice W. Kozminski were partners under the name of Kozminski & Co. In the month of February, 1894, before the 17th, Haerther offered the notes and trust deed so executed for sale to Kozminski & Co. They took a memorandum of the property, and, having examined it, agreed to accept his offer, but told him that they wanted the papers made on their own forms, in which Maurice W. Kozminski was named as trustee. Haerther asked for a temporary loan on the papers as they were, and they advanced him $1000 February 17, 1894. They gave him blank forms as they wanted the new papers made, and they held the first ones until the new ones should be executed. There was a discount of $18, and the balance of $482 was paid to Haerther February 28, 1894. Haerther brought to Kozminski & Co., on March 2, 1894, the notes and trust deed sought to be foreclosed, made out on the blanks fur-

nished him. The new trust deed appeared to be acknowledged before Haerther as notary public, and the papers were like the first ones, with the exception of the trustee and some differences in the form. With the trust deed and notes he delivered to Kozminski & Co. a release executed by himself as trustee, dated March 1, 1894, releasing to Nick J. Bornhofen a trust deed on the premises in question, dated January 16, 1894. He then received back from Kozminski & Co. the notes and trust deed first executed, and they recorded the new trust deed and the release. Haerther paid some bills for Bornhofen, and gave him $30 January 27, 1894, and $207 March 5, 1894. In this way Bornhofen received about $503.15 by the payment of bills and cash, and he kept importuning Haerther for the balance of the money, but never received it. Haerther did not return the first trust deed and notes to Bornhofen and did not cancel them, but held them until June 9, 1894, when he pledged them to Chalkley J. Hambleton, with other securities, as collateral to a loan of $2500 for ninety days. Hambleton took Haerther's word that the trust deed was a first lien, and did not examine the record. Bornhofen owed the defendant Kleene a balance on the purchase of the premises, and Kleene agreed to take from him a judgment note of Haerther on that account. Bornhofen obtained Haerther's note September 22, 1894, for $908.85, but it was not a judgment note, and Kleene refused to take it. On December 21, 1894, Hambleton notified Bornhofen by letter that he owned the notes and trust deed made to Haerther. Bornhofen filed his bill against Hambleton and Haerther, alleging that he had only received $503.15 on the loan, and that Haerther was insolvent. A decree was entered July 13, 1895, in that cause, finding the trust deed to Haerther to be a valid lien between the parties to the extent of $562.38, but as to the rest of the world a valid lien according to its tenor and effect. This decree recited that on or about March 1, 1894, Haerther fraudulently released said trust

deed by a release recorded as document 2,002,932, which is the number of the release before referred to, but in which the book and page of the record of the trust deed were incorrectly stated. By this decree it was ordered that said release be set aside as fraudulent and void. The defendant Kleene obtained from Hambleton the notes secured by the trust deed to Haerther, and Born-hofen gave Kleene a note dated December 22, 1894, for $1050, for the unpaid purchase money, and secured it by a trust deed executed by himself and wife to Charles Spangenberg, as trustee. Bornhofen paid the coupons on the first set of notes as they matured. In January, 1895, some person from the banking house of Kozminski & Co. called on Bornhofen and showed him two of the notes secured by the last trust deed, asking if they were his, and he replied that they were not. Complainant afterwards filed the bill in this case for the benefit of his firm, for which he held the notes secured by the trust deed which he sought to foreclose.

There was no dispute about the foregoing facts, and the only controversy was about the execution of the second set of papers. Upon that question the finding of the chancellor was in favor of complainant. He saw the witnesses and heard them testify, and was in every way better qualified to judge of their credibility than a court of review. According to the established rule, his finding should not be reversed on a question of fact unless it is clearly against the weight of the evidence. The defendants Nick J. Bornhofen and Anna Bornhofen denied that they signed the trust deed, and Nick J. Bornhofen testified that he did not sign the note. He said that the signature looked like he wrote his name, but he did not write it; that they only signed papers once in Haerther's office; that he was not asked to sign any other papers, and that he did not sign another set. This is all the evidence in the record that the signatures are not genuine. John F. Shenuit, who took the acknowledgment of

the first trust deed, testified that he was acquainted with the handwriting of Nick J. Bornhofen from having seen him write. He saw him write his name fifteen times when the notes were made and endorsed and the trust deed executed and acknowledged before the witness. He testified that the signatures to the notes and trust deed in suit were in the handwriting of Nick J. Bornhofen. Another witness qualified as an expert of large experience, and testified that the signatures were genuine. He said that there was an utter absence of any evidence of imitation, or of the hesitation or tremor that is sure to be found in some places except in the work of practiced forgers; that the letters were formed quickly and naturally, and that the general truthfulness of the writings showed them to be genuine and natural handwritings. He also testified that they were in the same handwriting as other signatures of Bornhofen to papers offered in evidence in the case by the defendant. It is also to be noted that while Bornhofen and wife disputed the signatures, they said in their answers to the bill that they were either never executed or that their execution was obtained by fraud, and that they were merely a duplicate set of papers for the same indebtedness. When the answers were drawn it is evident that they were not certain whether they signed the papers or not. The answers were drawn by their solicitor, but, of course, were framed from information furnished by them; and Bornhofen himself admitted that the signatures were like he wrote his name. In addition to the evidence in the record the chancellor had the benefit of inspecting the two sets of papers which were all properly in evidence in the case. In considering the issue, the court might and should compare the signatures of the papers so in evidence as a means of determining whether the disputed signatures were genuine. (*Brobston* v. *Cahill*, 64 Ill. 356.) Of this means of determining the truth the Appellate Court and this court are deprived. That it was a most

important and valuable aid is certain. It may have afforded the most convincing proofs that the signatures were genuine, and it is to be presumed that it supported the finding of the chancellor in that regard. Haerther was examined only concerning the signature to the application for the loan. He, of course, knew more than he was called upon to state, but he had been guilty of a fraud in any view of the case, and indictments were pending against him, so that we do not regard it as very surprising that complainant did not examine him further. If the case were to be decided on the failure to produce evidence which was in existence, it might be said that there were many persons who were well acquainted with the handwriting of Bornhofen who were not called as witnesses. He was an architect, accustomed to sign certificates, and his handwriting must have been known.

It is claimed that Kozminski & Co. were negligent in returning the first set of papers to Haerther without canceling them, so that he was enabled to perpetrate a fraud, and therefore they should suffer loss rather than the one to whom he transferred them. The papers were returned to him just as they were received, and he was the trustee in the trust deed securing their payment. If they had been delivered to some other person there would be more force in the argument, but we do not think Kozminski & Co. were negligent in delivering them to him.

In this state of the record we think that the Appellate Court erred in reversing the decree. Its judgment and decree will therefore be reversed and the decree of the Superior Court will be affirmed.

*Judgment reversed.*

Mr. JUSTICE MAGRUDER: I think the correct view of the transaction here involved is expressed, and the correct conclusion in relation thereto is announced, by the Appellate Court in *Bornhofen* v. *Greenebaum*, 68 Ill. App. 645.

PHILLIPS, C. J., also dissenting.